**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Smith,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-24-03545-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Plaintiff Sean Smith's appeal from the Commission of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits, (Doc. 7-3), Plaintiff's opening brief, (Doc. 9), Defendant's response, (Doc. 13), and Plaintiff's reply, (Doc. 14).

## I.   BACKGROUND

### a. Factual and Procedural Overview

Plaintiff is 49 years old with "at least a high school education." (Doc. 9 at 4). He previously worked "as a user support analyst." (Doc. 9 at 4). Plaintiff filed his Social Security Disability Insurance ("SSDI") benefits application on November 11, 2022, alleging disabilities beginning on June 26, 2022. (Doc. 7-3 at 17). The application "was denied initially on April 23, 2023, and upon reconsideration on December 27, 2023." (Doc. 7-3 at 17). After an administrative hearing, an ALJ denied Plaintiff's claim. (Doc. 7-3 at 14). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (Doc. 7-3 at 2-5).

**b. The SSA's Five-Step Evaluation Process**

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," *i.e.*, doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)-(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite his limitations," based on all relevant

evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)-(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### c. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that Plaintiff "has not engaged in substantial gainful activity since June 26, 2022, the alleged onset date." (Doc. 7-3 at 19).

At Step Two, the ALJ determined that Plaintiff "has the following severe impairments: lumbar and thoracic spondylosis; L1 compression fracture deformity, degenerative joint disease of the bilateral knees, flat feet, obstructive sleep apnea, obesity, major depressive disorder, anxiety disorder; unspecified and post-traumatic stress disorder (PTSD)." (Doc. 7-3 at 19).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (Doc. 7-3 at 20). Subsequently, the ALJ determined that Plaintiff had the RFC to:

to perform light work as defined in 20 CFR 404.1567(b) except he can sit for six hours out of an eight-hour day and stand and/or walk for four hours out of an eight-hour day. He can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, and crouch; never kneel or crawl. He must avoid concentrated exposure to hazards, like dangerous moving machinery and unprotected heights. He is able to understand, remember, and carry out simple instructions and make simple, work-related decisions in a routine work setting. He can frequently interact with supervisors, coworkers, and the public.

(Doc. 7-3 at 22).

At Step Four, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." (Doc. 7-3 at 28).

At Step Five, the ALJ, in considering Plaintiff's age, education, work experience, and RFC, found that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Doc. 7-3 at 28). Examples of such jobs include order caller, photocopying machine operator, and agriculture produce sorter. (Doc. 7-3 at 29). Accordingly, the ALJ concluded that Plaintiff was not disabled, "as defined in the Social Security Act, from June 26, 2022, through the date of [the] decision." (Doc. 7-3 at 29).

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving

conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if, despite the legal error, 'the agency's path may reasonably be discerned . . .'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

## III.   DISCUSSION

Plaintiff appeals the SSA's denial of Social Security benefits, alleging that the ALJ's findings are unsupported by substantial evidence and the ALJ erred as a matter of law. More specifically, Plaintiff argues that (1) that ALJ failed to consider the SSR 16-3p factors in evaluating credibility; (2) the ALJ "usurped" medical experts in its consideration of an MRI; (3) the ALJ failed to consider Dr. Bonilla's opinion regarding an annular tear; and (4) the ALJ improperly discredited Plaintiff and Dr. Brooks with respect to yoga and tai chi. (Doc. 9 at 15-22). The Court considers each claim in turn.

### a.   SSR 16-3p factors

Under SSR 16-3p, an ALJ must use the following factors when "evaluat[ing] the intensity, persistence, and limiting effects of an individual's symptoms:"

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief

- 5 -

>    of pain or other symptoms;
>    6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>    7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at * 7-8 (Oct. 25, 2017).

These factors "are a recitation of the factors set forth in the regulations at 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The regulations state only that the ALJ will *consider* these factors and not that the ALJ is required to specifically *discuss* each of these factors in the opinion." *White v. Comm'r of Soc. Sec.*, No. 1:22-CV-00615-BAM, 2023 WL 3977506, at *6 (E.D. Cal. June 13, 2023) (internal citation omitted) (emphasis added). In other words, "SSR 16-3p does not require the ALJ to discuss expressly each of these factors." *Id.*; *see also* SSR 16-3p, 2017 WL 5180304, at * 8 (ALJ need only "discuss the factors pertinent to the evidence of record.").

Here, Plaintiff repeatedly says that the ALJ did not *consider* all the factors the ALJ was required to consider under SSR 16-3p. (Doc. 9 at 15-16; Doc. 14 at 1). In doing so, Plaintiff not only improperly speculates regarding the ALJ's decision-making process, but Plaintiff conflates what the ALJ is required to do; while the ALJ must *consider* the factors, she need not *discuss* each factor in the opinion. And, here, the ALJ indicated that she considered each factor. (*See* Doc. 7-3 at 22 ("[T]he undersigned has considered all symptoms . . . based on the requirements of . . . SSR 16-3p.")). Nonetheless, the Court will interpret Plaintiff as arguing that the ALJ failed to *discuss* a factor that was pertinent to the evidence of record.

Plaintiff first argues that the ALJ's "short sentence summary" that the Plaintiff "testified he has back pain" "does not include all factors the ALJ was required to consider by SSR 16-3p." (Doc. 9 at 15-16). Plaintiff similarly argues that the ALJ was required to discuss Plaintiff's specific testimony regarding (1) "sharp, shooting pains that go from [his] feet all the way up to [his] back," (2) his inability to unload the dishwasher or microwave

- 6 -

food, and (3) his inability to sit "for a long time."[1] (Doc. 9 at 16).

The Court rejects these arguments for the following reasons. First, it is permissible for the ALJ to summarize Plaintiff's subjective symptom testimony. *See, e.g., Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023) (ALJ is "not require[d] . . . to perform a line-by-line exegesis of the claimant's testimony, nor [are] they require[d] [] to draft dissertations when denying benefits."). Second, this is not the ALJ's only reference to Plaintiff's testimony. The ALJ references various other, specific parts of Plaintiff's testimony throughout her analysis.[2] Third, the ALJ identifies inconsistencies between the objective medical evidence and Plaintiff's testimony and gives specific reasons for discounting Plaintiff's symptom testimony. For example, the ALJ discusses Plaintiff "needing the assistance of his support dog to pick up items he has dropped" and contrasts this with a consultative examination that suggests Plaintiff has "a substantial residual ability to stand, walk, sit, lift, and carry." (Doc. 7-3 at 23). The ALJ discusses Plaintiff's report that (1) knee injections were effective and relieved his pain for six months, and (2) that "his medications are effective," both of which cut against Plaintiff's alleged limitations. (Doc. 7-3 at 24). The ALJ discusses Plaintiff's report "that he does yoga/tai-chi and enjoys walking his dogs"[3] and explains how this, in combination

---

[1] Curiously, in Plaintiff's reply, Plaintiff seemingly abandons these arguments and instead argues that the ALJ "cherry-pick[ed] evidence" and should have considered "Dr. Bonilla's expert opinion that the MRI results may in fact confirm the validity of the Plaintiff's complaints." (Doc. 14 at 2). The Court discusses Dr. Bonilla's opinion below.

[2] *See, e.g.,* Doc. 7-3 at 22-23, 25:
> The claimant testified he is unable to work due to difficulty concentrating and difficulty handling stressful situations. He testified he does not like traffic or crowds, does not like people and does not do well in spaces where he is around others. He explained he has support dogs that help him with panic attacks and with picking up items he may drop. He testified he has back pain and knee pain. He explained he wears a knee brace daily and has been using a cane for 2 years and a walker for 4-6 months due to his knee problems.
> . . .
> The claimant testified he is unable to work due to difficulty concentrating and difficulty handling stressful situations. He testified he does not like traffic or crowds, does not like people and does not do well in spaces where he is around others. He explained he has support dogs that help him with panic attacks.

[3] Additionally, this discussion shows the ALJ's consideration of another 16-3p factor: daily activities.

with medical evidence, cuts against "finding a hand-held assistive device is medically required." (Doc. 7-3 at 24). These are just a few examples; the ALJ devotes six, single-spaced pages to explaining why Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 7-3 at 27). Accordingly, it is clear that the ALJ's reference to the 16-3p factors, combined with the ALJ's in-depth discussion of Plaintiff's testimony and evidence in the record, are sufficient to support the ALJ's decision to discount Plaintiff's symptom testimony. The ALJ gave specific, clear, and convincing reasons for this decision and the Court affirms the ALJ.

### b. Plaintiff's MRI

First, Plaintiff takes issue with the ALJ not referencing or including "photographs or scans of the actual film or imaging scans reviewed in the first instance by the radiologist and perhaps treating physician(s)." (Doc. 9 at 16). The Commissioner responds that "it is unclear why such evidence is necessary, especially since Plaintiff argues (correctly) that the ALJ is a lay person and would not have the expertise to interpret the results." (Doc. 13 at 8). The Court agrees with the Commissioner and does not find this omission to constitute error.

Second, Plaintiff takes issue with how the ALJ "interpret[ed] [] the radiologist's summary report of [] highly technical medical evidence," arguing that this constitutes the ALJ "playing doctor." (Doc. 9 at 17). The ALJ found that: "While these imaging reports document some abnormalities, they do not show more significant findings, like central canal compromise, significant stenosis, nerve root impingement or herniation, nor were there any other objective findings consistent with the level of pain he has alleged." (Doc. 7-3 at 23). The first part of this statement is a simple fact: either a medical provider found that the imaging reports do not show those conditions, or those conditions were not referenced by any medical provider.[4] The second part of the statement is supported by the

---

[4] The Court searched the record for "central canal compromise" and "nerve root impingement" and did not find any references. Dr. Suzie El-Saden, discussed more below, found "[n]o disc herniation" and "[n]o spinal canal or significant foraminal stenosis." (Doc. 8-2 at 84; Doc. 8-3 at 17-18).

medical opinion of Dr. Javier Torres. As the Commissioner points out, "Javier Torres, M.D., reviewed the evidence, *including the spinal x-rays and MRI*, and determined that Plaintiff did not have work preclusive limitations and could perform light work."[5] (Doc. 13 at 9 (emphasis added)). Plaintiff replies that Dr. Torres "did not have the benefit of the actual MRI imaging scans or films." (Doc. 14 at 3). Dr. Torres' report references an MRI and Dr. Torres concluded that Plaintiff is not disabled and can adjust to other work. (Doc. 7-4 at 20). Still, Plaintiff argues in the reply brief that "Dr. Torres' medical opinion does not relieve the ALJ of her duty to consider relevant medical evidence, and it certainly does not empower the ALJ to reach her own medical conclusions." (Doc. 14 at 3). However, again, the ALJ considered the relevant medical evidence and did not reach any independent medical conclusions beyond what is permissible.[6] Consequently, the ALJ did not err in this regard.

### c. Dr. Bonilla

Dr. Gabriel Bonilla reported the following: "No mention of annular tear but I would not be surprised [if] there is some sort of tear on the posterior aspect of the annulus based on [how] the MRI looks." (Doc. 8-3 at 51). The ALJ did not reference Dr. Bonilla's report. Plaintiff argues that this is an example of the ALJ "substitut[ing] her own lay knowledge to interpret the results of imaging studies" and argues that the ALJ needed to "provide a narrative discussion as to why her lay opinion would be correct instead of [Dr. Bonilla's]." (Doc. 9 at 17-18).

An ALJ must evaluate medical opinion evidence. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions. . . ." 20 C.F.R. § 404.1513(a)(2). The Court agrees with the Commissioner that this specific

---

[5] Plaintiff argues that the ALJ erred by stating that conditions that could "produce severe pain" were not found because the MRI shows conditions that could "possibly produce significant pain." (Doc. 9 at 17). However, Dr. Torres' findings directly contradict this argument.
[6] As the Commissioner notes, under the regulations, the ALJ may "consider[] objective medical evidence in the medical record and appropriately [make] findings about what it show[s]." (*See* Doc. 13 at 9-10).

- 9 -

sentence of Dr. Bonilla's report is not a medical opinion because it was speculative in nature. (*See* Doc. 13 at 10-11). As such, the ALJ was not required to include this in her analysis and did not err in this regard.

### d. Yoga and Tai Chi

Dr. Mitchell Brooks reported that Plaintiff had the following impairments (reported in Plaintiff's own words):

> Squatting, kneeling, crawling, getting into and out of low cars, up from low seats, up from floors, pivoting, stairs down more than up, putting on trousers, shoes and sox, sitting for more than 130 minutes all have some degree of functional interference. [Plaintiff] can only drive for 30 minutes and then must stop. He can walk for 5 minutes [] and then must stop. [Plaintiff] can stand in place for 5 minutes.

(Doc. 8-4 at 92).

The ALJ found Dr. Brooks' opinion "partially persuasive" because "[w]hile the [Plaintiff] reasonably is unable to climb ladders or kneel and must avoid hazards and has postural limitations, the indication the [Plaintiff] is unable to crouch and can only stand for 5 minutes is not consistent with the longitudinal medical record." (Doc. 7-3 at 26). The ALJ notes that Plaintiff "reports he does yoga and tai chi, and his strength is shown as full (5/5), and his range of motion is not shown to be limited to the extent these activities would be precluded." (Doc. 7-3 at 27). Plaintiff takes issue with the ALJ "assuming the yoga and tai chi were somehow strenuous activities that exceeded the physical limitations opined to by Dr. Brooks." (Doc. 9 at 18). Plaintiff lists various record cites to support his argument that Plaintiff's yoga and tai chi involved "physical restrictions" such that the activities "do not contradict the Plaintiff's testimony . . . nor do they contradict Dr. Brooks' expert opinions." (Doc. 9 at 19).

The ALJ did not entirely disregard Dr. Brooks' opinion; rather, the ALJ found it "partially persuasive." The ALJ could reasonably infer that the practice of yoga and tai chi, even if virtual or chair-based, suggests that Plaintiff's range of motion is not as limited as Dr. Brooks found. *See Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (upholding ALJ's rejection of doctor's opinion because it was "supported by reasonable inferences drawn from the record."). Additionally, yoga and tai chi are not the *sole* reason that the

ALJ found Dr. Brooks' opinion partially persuasive; the ALJ also pointed to the fact that Plaintiff's strength "is shown as full (5/5)." Thus, the Court finds that the ALJ has provided enough reasoning for the Court to meaningfully determine that the ALJ's conclusion is supported by substantial evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED** and the Clerk of the Court shall enter judgment accordingly.

Dated this 9th day of June, 2025.

James A. Teilborg
Senior United States District Judge